**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

PHILLIP J. LYONS,

               Plaintiff,

   v.

A. DICUS et al.,

              Defendants.

Case No. 2:14-cv-1813-APG-VCF

**SCREENING ORDER**

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*. (Dkt. # 1, 1-1). The Court now screens Plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A.

**I.**    ***IN FORMA PAUPERIS* APPLICATION**

Before the Court is Plaintiff's application to proceed *in forma pauperis.* (Dkt. #1). Based on the information regarding Plaintiff's financial status, the Court finds that Plaintiff is not able to pay an initial installment payment toward the full filing fee pursuant to 28 U.S.C. § 1915. Plaintiff will, however, be required to make monthly payments toward the full $350.00 filing fee when he has funds available.

**II.**    **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two

1   essential elements: (1) the violation of a right secured by the Constitution or laws of the

2   United States, and (2) that the alleged violation was committed by a person acting

3   under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

4          In addition to the screening requirements under § 1915A, pursuant to the Prison

5   Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the

6   allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a

7   claim on which relief may be granted, or seeks monetary relief against a defendant who

8   is immune from such relief."  28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for

9   failure to state a claim upon which relief can be granted is provided for in Federal Rule

10  of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when

11  reviewing the adequacy of a complaint or an amended complaint.  When a court

12  dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the

13  complaint with directions as to curing its deficiencies, unless it is clear from the face of

14  the complaint that the deficiencies could not be cured by amendment.  *See Cato v.*

15  *United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

16         Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See*

17  *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for

18  failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of

19  facts in support of the claim that would entitle him or her to relief.  *See Morley v. Walker*,

20  175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the court takes as true

21  all allegations of material fact stated in the complaint, and the court construes them in

22  the light most favorable to the plaintiff.  *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957

23  (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards

24  than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

25  While the standard under Rule 12(b)(6) does not require detailed factual allegations, a

26  plaintiff must provide more than mere labels and conclusions.  *Bell Atlantic Corp. v.*

27  *Twombly*, 550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause

28  of action is insufficient.  *Id.*

- 2 -

1    Additionally, a reviewing court should "begin by identifying pleadings [allegations]
2    that, because they are no more than mere conclusions, are not entitled to the
3    assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   "While legal
4    conclusions can provide the framework of a complaint, they must be supported with
5    factual allegations."  *Id.*  "When there are well-pleaded factual allegations, a court
6    should assume their veracity and then determine whether they plausibly give rise to an
7    entitlement to relief."  *Id.*  "Determining whether a complaint states a plausible claim for
8    relief . . . [is] a context-specific task that requires the reviewing court to draw on its
9    judicial experience and common sense."  *Id.*

10    Finally, all or part of a complaint filed by a prisoner may therefore be dismissed
11    *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact.  This
12    includes claims based on legal conclusions that are untenable (e.g., claims against
13    defendants who are immune from suit or claims of infringement of a legal interest which
14    clearly does not exist), as well as claims based on fanciful factual allegations (e.g.,
15    fantastic or delusional scenarios).   *See Neitzke v. Williams*, 490 U.S. 319, 327-28
16    (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

17    **III.    SCREENING OF COMPLAINT**

18    In the complaint, Plaintiff sues multiple defendants for events that took place
19    while Plaintiff was incarcerated at Southern Desert Correctional Center ("SDCC").  (Dkt.
20    #1-1 at 1).   Plaintiff sues Defendants Correctional Officer A. Dicus, Warden Brian
21    Williams, Sr., and NDOC Director James G. Cox.  (*Id.* at 2).  Plaintiff alleges two counts
22    and seeks monetary damages and injunctive relief.  (*Id.* at 19, 24).

23    The complaint alleges the following: On January 16, 2014, Plaintiff and fellow
24    inmate, Martinez Aytch, asked Dicus to release them from Unit 1 in order to pick up their
25    legal mail in the law library.  (*Id.* at 3).  Dicus asked Correctional Valverde about the
26    matter and Valverde stated that he had already released the Unit 1 prisoners for the law
27    library.  (*Id.*)  Plaintiff and Aytch informed the officers that they were both scheduled for
28    1:30 p.m. legal mail pick up, that it was only 1:25 p.m., and that they had heard no prior

announcement for the 1:30 p.m. law library appointments.  (*Id.* at 3-4).  Dicus refused to release Plaintiff and Aytch to pick up their mail.  (*Id.* at 4).  Plaintiff and Aytch requested grievances to report the matter because Dicus had developed a routine of refusing to release prisoners for institutional appointments.  (*Id.*)  This worried Plaintiff because Williams and Cox had promulgated a practice that subjected prisoners to disciplinary action for not showing up to scheduled institutional appointments.  (*Id.*)

In response to the grievance request, Dicus said, "I don't give a fuck about a grievance" and told Valverde to "bring a whole stack of grievances."  (*Id.* at 4-5)  When Valverde returned with the grievances, Dicus took some of the grievances, started to hand Plaintiff and Aytch the grievances, and said, "Here, go write your fuckin' snitch kites."  (*Id.* at 5).  Dicus made this statement in front of a "vast number of other prisoners hanging out on [the] Unit 1-A wing" and intimated to "all those in earshot that Plaintiff and Aytch were snitches for attempting to utilize the prison grievance process."  (*Id.*)  Dicus knew that being viewed as a "snitch" in prison "posed a substantial risk to a prisoner's health and safety."  (*Id.*)  Plaintiff declined to accept the grievance from Dicus because he was concerned what the onlooking prisoners might think about accepting a "snitch kite."  (*Id.* at 5-6).

Aytch accepted a grievance and submitted an emergency grievance regarding Dicus's conduct for refusing to release him for mail pick up and for the snitch kite comment.  (*Id.* at 6).  One of Dicus's superiors denied Aytch's grievance.  (*Id.*)  Plaintiff witnessed Dicus confront Aytch.  (*Id.* at 6-7).  Plaintiff heard Aytch, who was African-American, ask Dicus, "What did you call me, a nigger? Did you call me a nigger?"  (*Id.* at 7).  Dicus responded affirmatively.  (*Id.*)  Dicus had his fellow officers remove Aytch from the unit.  (*Id.*)  Dicus searched Aytch's cell and confiscated his television.  (*Id.* at 7-8).  Aytch told Plaintiff that Dicus's fellow officers had locked Aytch in a holding cell for several hours while Dicus searched his cell.  (*Id.* at 8).  One week after Aytch had submitted the grievance, prison officials transferred him to a different institution.  (*Id.* at 11).

On January 17, 2014, Plaintiff saw Williams and personally informed Williams of Dicus's conduct in refusing to release Plaintiff and Aytch for legal mail pick up, intimating to other prisoners that Plaintiff and Aytch were snitches for seeking to use the grievance process, for calling Aytch a nigger, and for removing Aytch from his cell for several hours to search his cell for filing a grievance.  (*Id.* at 8-9).   Williams acknowledged that he had received complaints about Dicus but did not do anything other than tell Plaintiff to do whatever Dicus says.  (*Id.* at 9).

That same day, Plaintiff learned that Arinza Smith, another inmate, had submitted a grievance against Dicus for refusing to release him to an educational appointment.  (*Id.*)  The next day, Dicus and his fellow officers shook down all the cells but spent extra time in Smith's cell patronizing him about his religious preference.  (*Id.*)  Smith was African-American.  (*Id.*)

In Count I, Plaintiff alleges First and Eighth Amendment violations against Dicus for denying Plaintiff the right to file prison grievances and by endangering Plaintiff's health and safety by referring to prison grievances as "snitch kites" in the presence of other prisoners.  (*Id.* at 17).  In Count II, Plaintiff alleges First and Eighth Amendment violations against Williams and Cox for failing to take effective steps to correct or eradicate Dicus's retaliatory and abusive behavior toward SDCC prisoners.  (*Id.*)

The Court interprets these allegations as claims for unsafe prison conditions, retaliation, and denial of access to the courts.

### A.    Unsafe Prison Conditions

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety.  *Id.* at 834.  To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from

1   which the inference could be drawn that a substantial risk of serious harm exists, and

2   [the official] must also draw the inference." *Id.* at 837.  Prison officials may not escape

3   liability because they cannot, or did not, identify the specific source of the risk; the

4   serious threat can be one to which all prisoners are exposed.  *Id.* at 843.

5        A prisoner seeking a remedy for unsafe conditions does not have to await a

6   tragic event such as an actual assault before obtaining relief.  *Id.* at 845.  "An inmate

7   seeking an injunction on the ground that there is a contemporary violation of a nature

8   likely to continue must adequately plead such a violation."  *Id.* at 845-46 (quotations and

9   citation omitted).   Plaintiff must plead that prison officials are "knowingly and

10   unreasonably disregarding an objectively intolerable risk of harm, and that they will

11   continue to do so." *Id.* at 846.

12        The Court finds that Plaintiff fails to state a claim for unsafe prison conditions

13   based on the allegation that Dicus referred to inmate grievances as "snitch kites."

14   There are no allegations in the complaint that any inmate thought Plaintiff was a snitch

15   for requesting a grievance to complain about Dicus's actions nor are there any

16   allegations that Aytch, who took a "snitch kite", had been threatened by any inmates for

17   filing a grievance.  There are no allegations in the complaint which demonstrate that

18   there was a serious threat to Plaintiff or Aytch's lives from any inmates from the use of

19   the term "snitch kite."   As such, the Court dismisses this claim with prejudice, as

20   amendment would be futile.

21        **B.**   **Retaliation**

22        Prisoners have a First Amendment right to file prison grievances and to pursue

23   civil rights litigation in the courts.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir.

24   2004).  "Without those bedrock constitutional guarantees, inmates would be left with no

25   viable mechanism to remedy prison injustices.  And because purely retaliatory actions

26   taken against a prisoner for having exercised those rights necessarily undermine those

27   protections, such actions violate the Constitution quite apart from any underlying

28   misconduct they are designed to shield."  *Id.*

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68.

The Court finds that Plaintiff fails to state a retaliation claim. Even if requesting a grievance, but not accepting the grievance, is considered protected conduct, Plaintiff has not established that Dicus engaged in an adverse action against Plaintiff for that request. As discussed above, Dicus's use of the term "snitch kite" cannot be deemed adverse in this case because Plaintiff has not alleged that there was any serious threat from any inmates when Dicus used that term in reference to Plaintiff's request. As such, Plaintiff fails to state a claim for retaliation. The Court dismisses this claim with prejudice, as amendment would be futile.

### C. Denial of Access to the Courts

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered "actual injury." *Id.* at 349. The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353. "The right of meaningful access to the courts extends to established prison grievance procedures." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).

The Court finds that Plaintiff fails to state a colorable claim for denial of access to the courts. Based on the previous discussions, the Court does not find that the use of the term "snitch kite" prevented Plaintiff from accepting a grievance from Dicus and reporting him. Additionally, Plaintiff alleges that Aytch filed a grievance against Dicus without any threats from inmates. As such, the Court dismisses this claim with prejudice, as amendment would be futile.

IV.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. #1) without having to prepay the full filing fee is **GRANTED**. Plaintiff shall **not** be required to pay an initial installment fee.  Nevertheless, the full filing fee shall still be due, pursuant to 28 U.S.C. § 1915, as amended by the Prisoner Litigation Reform Act.  The movant herein is permitted to maintain this action to conclusion without the necessity of prepayment of fees or costs or the giving of security therefor.  This order granting *in forma pauperis* status shall not extend to the issuance of subpoenas at government expense.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915, as amended by the Prisoner Litigation Reform Act, the Nevada Department of Corrections shall pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of **PHILLIP J. LYONS, #33833** (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action.  The Clerk shall send a copy of this order to the attention of **Albert G. Peralta, Chief of Inmate Services for the Nevada Department of Prisons,** P.O. Box 7011, Carson City, NV 89702.

**IT IS FURTHER ORDERED** that, even if this action is dismissed, or is otherwise unsuccessful, the full filing fee shall still be due, pursuant to 28 U.S.C. §1915, as amended by the Prisoner Litigation Reform Act.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file the complaint (Dkt. #1-1).

**IT IS FURTHER ORDERED** that the complaint is dismissed in its entirety, with prejudice, as amendment would be futile.

**IT IS FURTHER ORDERED** that this Court certifies that any *in forma pauperis* appeal from this order would **not** be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3).

1    **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

2  accordingly.

3    Dated:  March 16, 2015.

4

5    _____

    UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28